UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
(DALLAS DIVISION)

| | |
|---|---|
| DAVID M. STEIN, Individually And On Behalf Of All Others Similarly Situated, § § § <br> Plaintiff, § § <br> v. § § <br> MATCH GROUP, INC., GREGORY R. BLATT, GARY SWIDLER, MICHAEL H. SCHWERDTMAN, GREGG J. WINIARSKI, JOSEPH M. LEVIN, J.P. MORGAN SECURITIES LLC, ALLEN & COMPANY LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, DEUTSCHE BANK SECURITIES INC., BMO CAPITAL MARKETS CORP., BARCLAYS CAPITAL INC., BNP PARIBAS SECURITIES CORP., PNC CAPITAL MARKETS LLC, COWEN AND COMPANY, LLC, SG AMERICAS SECURITIES, LLC, FIFTH THIRD SECURITIES, INC., and OPPENHEIMER & CO. INC., § § § § § § § § § § § § § § § § § § § § <br> Defendants. § | Civil Action No. <br><br><br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

Plaintiff David M. Stein, individually and on behalf of all persons similarly situated, by his undersigned attorneys, for his complaint against Defendants (defined below) alleges the following based upon personal knowledge as to his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Match Group, Inc. ("Match Group" or the

"Company"), securities analysts' reports and advisories about the Company, and information readily obtainable from public sources. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action brought on behalf of all persons or entities who purchased or otherwise acquired Match Group securities pursuant or traceable to the Company's Registration Statement and its Prospectus issued in connection with the Company's Initial Public Offering (the "Offering" or "IPO"), which commenced on or about November 20, 2015. Plaintiff seeks to pursue remedies against Defendants under §§ 11, 12(a) and 15 of the Securities Act of 1933.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 11, 12(a) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77(o).

3. This Court has jurisdiction over the subject matter of this action pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v.

4. Venue is proper in this Judicial District pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v(a), because the Company is headquartered in Dallas, Texas, and certain of the acts alleged in this Complaint occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

**Plaintiff**

6. Plaintiff David M. Stein, as set forth in the attached certification, purchased Match Group securities pursuant to the IPO.

**Officer and Director Defendants**

7. **Defendant Match Group** provides dating products. It operates a portfolio of approximately 45 brands, including Match, OkCupid, Tinder, PlentyOfFish, Meetic, Twoo, OurTime, and FriendScout24. Match Group offers its dating products through its websites and applications in 38 languages in approximately 190 countries. It also provides various test preparation, academic tutoring, and college counseling services. The company was incorporated in 2009 and is headquartered in Dallas, Texas. Match Groupis a subsidiary of IAC/InterActiveCorp.

8. *Defendant Gregory R. Blatt* ("Blatt") has served, at all relevant times, as the Company's Principal Executive Officer and Chairman of the Board of Directors (the "Board"). Blatt signed the Company's Registration Statement (defined below) filed with the SEC.

9. *Defendant Gary Swidler* ("Swidler") has served, at all relevant times, as the Company's Chief Financial Officer ("CFO"). Swidler signed the Company's Registration Statement filed with the SEC.

10. *Defendant Michael H. Schwerdtman* ("Schwerdtman") has served, at all relevant times, as the Company's Vice President ("VP"). Schwerdtman signed the Company's Registration Statement filed with the SEC.

11. ***Defendant Gregg J. Winiarski*** ("Winiarski") has served, at all relevant times, as the Company's Director. Winiarski signed the Company's Registration Statement filed with the SEC.

12. ***Defendant Joseph M. Levin*** ("Levin") has served, at all relevant times, as the Company's Director. Levin signed the Company's Registration Statement filed with the SEC.

13. Defendants Blatt, Swidler, Schwerdtman, Winiarski, and Levin are herein referred to as the "Individual Defendants."

**Underwriter Defendants**

14. ***Defendant J.P. Morgan Securities LLC*** ("J.P. Morgan") served as an underwriter to Match Group in connection with the Offering.

15. ***Defendant Allen & Company LLC*** ("Allen & Company") served as an underwriter to Match Group in connection with the Offering.

16. ***Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated*** ("Merrill Lynch") served as an underwriter to Match Group in connection with the Offering.

17. ***Defendant Deutsche Bank Securities Inc.*** ("Deutsche Bank") served as an underwriter to Match Group in connection with the Offering.

18. ***Defendant BMO Capital Markets Corp.*** ("BMO Capital") served as an underwriter to Match Group in connection with the Offering.

19. ***Defendant Barclays Capital Inc.*** ("Barclays Capital") served as an underwriter to Match Group in connection with the Offering.

20. ***Defendant BNP Paribas Securities Corp.*** ("BNP Paribas") served as an underwriter to Match Group in connection with the Offering.

21.     ***Defendant Cowen and Company, LLC*** ("Cowen and Company") served as an underwriter to Match Group in connection with the Offering.

22.     ***Defendant Oppenheimer & Co. Inc.*** ("Oppenheimer") served as an underwriter to Match Group in connection with the Offering.

23.     ***Defendant PNC Capital Markets LLC*** ("PNC Capital") served as an underwriter to Match Group in connection with the Offering.

24.     ***Defendant SG Americas Securities, LLC*** ("SG Americas") served as an underwriter to Match Group in connection with the Offering.

25.     ***Defendant Fifth Third Securities, Inc.*** ("Fifth Third") served as an underwriter to Match Group in connection with the Offering.

## PROSPECTUS AND REGISTRATION STATEMENT

26.     On November 20, 2015, in connection with its IPO, Match Group filed with the SEC a final prospectus (the "Prospectus") on Form 424B4 dated November 18, 2015. The Prospectus was part of a registration statement, filed on Form S-1/A with the SEC on November 17, 2015, and declared effective by the SEC on November 17, 2015 (the "Registration Statement"). The Registration Statement was signed by the Individual Defendants.

27.     The Match Group Prospectus stated in relevant part:

> In addition to our Dating business, we also operate a Non-dating business in the education category through our ownership of The Princeton Review. The Princeton Review provides a variety of test preparation, academic tutoring and college counseling services. We acquired this business because it relies on many of the same competencies as those relied upon by our Dating business, such as paid customer acquisition, a combination of paid and free business models, a deep understanding of the lifetime values of customers and a strong expertise in user-interface development. The Princeton Review's revenue consists primarily of fees received for in-person and online test preparation classes, access to online test preparation materials and individual tutoring services.

\*   \*   \*

> Increased investment in Non-dating driven by the acquisition of The Princeton Review also negatively impacted Adjusted EBITDA beginning with the three months ended September 30, 2014 through the second quarter of 2015. ***Non-dating reported positive Adjusted EBITDA for the first time in the third quarter of 2015***, which is its seasonally strongest quarter. [Emphasis added].

28. The above statements were made during the fourth quarter in late November 2015 and led investors to believe that the Company's Princeton Review business had turned a corner and was experiencing profitability for the first time. These statements were materially false and misleading when made because, as later revealed by Defendant Blatt during a February 3, 2016 conference call, Defendants knew and failed to disclose in late November 2015, during the 2015 fourth quarter, that the 2015 fourth quarter revenue and financial results would be adversely impacted by two items. The first was a U.S. government contract that was executed 2 and 1/2 months later than anticipated, which delay was known to Defendants in late November 2015 when they issued the Registration Statement and the Prospectus and which resulted in a revenue shortfall of millions of dollars. The second was a "***greater than anticipated slowdown***" in SAT preparation business clients during the 2015 fourth quarter due to a revamp of the test, which was also known to Defendants in late November when they issued the Registration Statement and Prospectus.

29. As later admitted by Defendant Blatt during a February 3, 2016 conference call discussing the Company's 2015 fourth quarter financial performance:

> Two things, there are two very discrete things that happened this quarter, which is one, we were signing a contract with the US government and it signed 2-1/2 months later than we thought. That cost us a couple million dollars of revenue, just moved it back and at the time we expected to get it done earlier and it didn't.

* * *

> . . . there was a big change in the SAT this year. It happens every 10 years or so. We made a prediction about how test takers would -- we thought some would rush to take the old test, more of them sort of paused to take the new test than we expected. Cost us revenue. […]

30. The Company also admitted in its 2015 fourth quarter financial report: ***"Non-dating revenue declined 2% versus Q4 2014 due primarily to a delay in demand for test prep as a result of the introduction of the new SAT test and a delay in an institutional tutoring contract."*** This decline in demand was also known to the Defendants in late November 2015 when they issued the Registration Statement and Prospectus, neither of which revealed this material information.

31. The Prospectus issued in late November 2015 further stated: "For the twelve months ended September 30, 2015, ARPPU [Average Revenue per Paying User] was $0.59." The Prospectus further stated in relevant part:

> Tinder, OkCupid, PlentyOfFish and Twoo all have a lower average revenue per paid user, or ARPPU, than our other brands. ARPPU for these brands was approximately 50% of the aggregate ARPPU of our other brands for the nine months ended September 30, 2015. As the number of paid members from the lower ARPPU brands has become an increasingly large percentage of our aggregate number of paid members, our overall or consolidated ARPPU has declined. For example, pro forma for PlentyOfFish, our consolidated ARPPU for the quarter ended September 30, 2015 was 9% lower compared to the first quarter of 2013 (excluding the effects of foreign exchange). However, within many of our significant brands individually, ARPPU is increasing. For example, for the quarter ended September 30, 2015, as compared to the quarter ended March 31, 2013 (excluding the effects of foreign exchange), ARPPU was approximately 5% higher at Match North America, 4% higher at our affinity brands, 7% higher at Meetic, 5% higher at OkCupid and 10% higher (comparing the quarter ended June 30, 2015 to the quarter ended March 31, 2013) at PlentyOfFish. Additionally, the decline in ARPPU has coincided with the decline in the cost of acquiring new users

discussed above.  ***Although brand mix shift is reducing consolidated ARPPU, we see continued ability to increase price at many of our brands.  In the third quarter of 2015, prices at Match North America, Meetic, affinity brands, OkCupid, and Twoo were higher than they were in the comparable period a year earlier.  For purposes of this paragraph, references to "Meetic" include Meetic and all of our other brands and businesses in Europe***.  (Emphasis added).

32.  These statements made in the Prospectus led investors to believe that although there had been a mix-driven decline in consolidated ARPPU, the Company's current ability to increase price for many of its products would be a partially offsetting factor.  These statements were materially false and misleading when made because, at the time they were made (November 20, 2015 -- almost two full months into the fourth quarter) ARPPU was dropping heavily.  As later admitted by the Company in its issuance of its 2015 fourth quarter financial report: "ARPPU was $0.53 for Q4 2015, compared to $0.62 in Q4 2014, a decline of 14%."

33.  Moreover, as revealed by Defendant Blatt during a February 3, 2016 conference call, the Company knew after the 2015 second quarter, before the Prospectus was filed on November 20, 2015, that there would be a fourth quarter drop in ARPPU:

> Although as I said in prior questions, the nature of these subscription businesses and what we call our waterfall, which is at any given time what percentage of your paid subscribers are people who have come in recently versus people who came in before, means you will see an ongoing drag for a while and that's really the Q4 story. Which is yes, the sort of ongoing mobile pressure is lightning but you're feeling the effects of the prior quarters.
>
> It never manifests itself in the quarter, it manifests itself -- this may not be precisely right, but in general, *your Q4 sub-performance is frankly much more related to your Q2 activity than to your Q4 activity just because of the nature of the relative size of the waterfall.  There is a lag effect and that's why I think, even with the improvements we make this year, we think we are looking at flattish for those businesses over the course of the year.* OkCupid, PlentyOfFish and Twoo all have a lower average revenue per paid user, or ARPPU, than our other brands.  ARPPU

for these brands was approximately 50% of the aggregate ARPPU of our other brands for the nine months ended September 30, 2015. As the number of paid members from the lower ARPPU brands has become an increasingly large percentage of our aggregate number of paid members, our overall or consolidated ARPPU has declined. For example, pro forma for PlentyOfFish, our consolidated ARPPU for the quarter ended September 30, 2015 was 9% lower compared to the first quarter of 2013 (excluding the effects of foreign exchange). However, within many of our significant brands individually, ARPPU is increasing. For example, for the quarter ended September 30, 2015, as compared to the quarter ended March 31, 2013 (excluding the effects of foreign exchange), ARPPU was approximately 5% higher at Match North America, 4% higher at our affinity brands, 7% higher at Meetic, 5% higher at OkCupid and 10% higher (comparing the quarter ended June 30, 2015 to the quarter ended March 31, 2013) at PlentyOfFish. Additionally, the decline in ARPPU has coincided with the decline in the cost of acquiring new users discussed above. ***Although brand mix shift is reducing consolidated ARPPU, we see continued ability to increase price at many of our brands. In the third quarter of 2015, prices at Match North America, Meetic, affinity brands, OkCupid, and Twoo were higher than they were in the comparable period a year earlier. For purposes of this paragraph, references to "Meetic" include Meetic and all of our other brands and businesses in Europe***. (Emphasis added).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of Match Group's securities pursuant to the IPO. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and

can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.

36. Record owners and other members of the Class may be identified from records maintained by Match Group or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customary used in securities class actions.

37. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   (a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

   (b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts regarding the Company's prospects; and

   (c) whether the members of the Class have sustained damages and, if so, the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM

### (Violation of Section 11 of The Securities Act Against All Defendants)

41.     Plaintiff repeats and re-alleges each and every allegation contained above.

42.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

43.     Match Group is the registrant for the IPO.  The Individual Defendants are responsible for the contents of the Registration Statement based upon their status as directors of the Company or because they signed or authorized the signing of the Registration Statement on their behalf pursuant to Sections 11(a)(1)-(3) of the Securities Act. The Underwriter Defendants are responsible for the contents of the Registration Statement pursuant to Section 11(a)(5) of the Securities Act.

44.     As issuer of the shares, Match Group is strictly liable to Plaintiff and the Class for the misstatements and omissions.

45.     Match Group is strictly liable for the contents of the Registration Statement.  The Individual Defendants failed to make a reasonable investigation or to possess reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

46.     By reasons of the conduct herein alleged, each Defendant named in this Count violated Section 11 of the Securities Act.

47.     Plaintiff and the Class have sustained damages. The value of Match Group securities has declined substantially subsequent to and due to Defendants' violations.

48.     At the times Plaintiff purchased Match Group securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the IPO. Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## SECOND CLAIM

### (Violation of Section 12(a)(2) of The Securities Act Against All Defendants)

49.     Plaintiff repeats and re-alleges each and every allegation contained above.

50.     This cause of action is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), against all Defendants on behalf of Plaintiff and the other members of the Class, who purchased or acquired registered Match Group securities pursuant to the Prospectus and offering documents and any other oral or written communications used to solicit the IPO, including free writing prospectuses and road shows, and who were damaged by the acts alleged herein.

51.     Defendants named in this Count sold, offered for sale, and solicited the sale of the securities by the use of means or instruments of transport or communication in interstate commerce or of the mails, by means of the Prospectus or oral or other written communications, including the offering documents. The Prospectus and offering documents contained untrue

statements of material fact and omitted other facts necessary to make the statements made not misleading, and they failed to disclose material facts, as alleged herein.

52. Defendants sold the securities to Plaintiff and members of the Class by the use of means or instruments of transport or communication in interstate commerce or of the mails, by means of the Prospectus or oral or other written communications, including the offering documents.

53. Defendants actively solicited the sale of the securities to serve their own financial interests through, among other things, the preparation and dissemination of the Prospectus, participating in road shows, and the planning and orchestrating of all activities necessary to promote the sale of the securities.

54. The Prospectus and offering documents contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and they failed to disclose material facts, as alleged herein.

55. Defendants knew or in the exercise of reasonable care should have known that the Prospectus and offering documents contained statements of material fact that were misleading as alleged herein or that material facts necessary to make the statements not misleading should have been disclosed, as alleged herein.  None of Defendants made a reasonable investigation or had reasonable grounds to believe that the statements in the Prospectus were accurate and complete in all material respects.

56. Members of the Class purchased registered securities of Match Group in the IPO and were damaged thereby.

57. At the times they purchased Match Group securities, Plaintiff and the other members of the Class were without knowledge of the facts concerning the wrongful conduct

alleged herein and could not have reasonably discovered those facts prior to the IPO.  Less than one year has elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint.  Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

58.     By reason of the foregoing, Defendants are liable to Plaintiff and the members of the Class for violations of Section 12(a)(2) of the Securities Act.  Plaintiff and the other Class members hereby tender their registered securities of Match Group to Defendants and seek rescission of their purchases to the extent that they continue to own such securities.

### THIRD CLAIM

### (Violations of Section 15 of the Securities Act Against The Individual Defendants)

59.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.     This claim is asserted against the Individual Defendants, each of whom was a control person of Match Group at all relevant times.

61.     The Individual Defendants were control persons of Match Group by virtue of, *inter alia*, their positions as senior officers and/or directors of Match Group, and they were in positions to control and did control the false and misleading statements and omissions contained in the Prospectus and the Registration Statement.

62.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Prospectus and Registration Statement were accurate and complete in all material respects.  Had they exercised reasonable care, they would have known of the material misstatements and omissions alleged herein.

63. This claim was brought within one year after the discovery of the untrue statements and omissions in the Prospectus and Registration Statement and within three years after Match Group shares were sold to the Class in connection with the IPO. It is therefore timely brought.

64. By reason of the above conduct, for which Match Group is primarily liable, as set forth above, the Individual Defendants are jointly and severally liable with and to the same extent as Match Group pursuant to Section 15 of the Securities Action, 15 U.S.C. 77(o).

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff, David M. Stein, requests the following relief:

(a) An order under Rule 23 of the Federal Rules of Civil Procedure determining that this action is a proper class action, designating Plaintiff as class representatives and designating Plaintiff's counsel as Class Counsel;

(b) A judgment awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, plus pre-judgment and post-judgment interest thereon at the highest rates permissible at law or in equity;

(c) A judgment awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) A judgment awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 26, 2016

        Respectfully submitted,

        /s/ Roger L. Mandel
        Roger L. Mandel
        Texas Bar No. 12891750
        rlm@lhlaw.net
        Bruce E. Bagelman
        Texas Bar No. 01509700
        beb@lhlaw.net
        LACKEY HERSHMAN, L.L.P.
        3102 Oak Lawn Avenue, Suite 777
        Dallas, Texas 75219
        Telephone:    (214) 560-2201
        Telecopier:    (214) 560-2203

        -and-

        Thomas J. McKenna
        tjmckenna@gme-law.com
        Gregory M. Egleston
        gegleston@gme-law.com
        GAINEY McKENNA & EGLESTON
        440 Park Avenue South, 5th Floor
        New York, NY 10016
        Tel: (212) 983-1300
        Fax: (212) 983-0383

        ***Attorneys for Plaintiff and the Class***