IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DAVID M. STEIN, individually and on behalf of all others similarly situated, § § § | |
| Plaintiff, § | |
| § | |
| V. § | No. 3:16-cv-549-L |
| § | (consolidated with No. 3:16-cv-668-L) |
| MATCH GROUP, INC., ET AL., § § | |
| Defendants. § | |

## **MEMORANDUM OPINION AND ORDER**

These consolidated cases are two putative securities class actions brought on behalf of all persons or entities who purchased or otherwise acquired securities of Match Group Inc. ("Match Group" or the "Company") pursuant and/or traceable to the Company's Registration Statement issued in connection with Match Group's November 20, 2015 initial public offering (the "IPO").

United States District Judge Sam A. Lindsay has referred to the undersigned United States magistrate judge for determination, under 28 U.S.C. § 636(b), three competing motions for appointment as lead plaintiff and lead counsel: the Motion of Kenneth Varin for Appointment as Lead Plaintiff and Approval of His Selection of Counsel [Dkt. No. 6]; Mary McCloskey and Craig Kneller's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [Dkt. No. 9]; and the Motion for Appointment of Stein and Jenkins as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel [Dkt. No. 12]. *See* Dkt. No. 18.

The competing movants filed responses to the motions, *see* Dkt. Nos. 20, 21, & 22, and replies in support of their own respective motions, *see* Dkt. No. 24, 25, & 26.

The Motion of Match Investor Group for Appointment as Lead Plaintiff and Approval of Counsel [Dkt. No. 14], filed by Adam Marigliano, Liwei Sun, Stephany Kam-wan Chan, and Shen Shen, was voluntarily withdrawn and terminated after the other competing motions were filed. *See* Dkt. No. 19.

For the reasons explained below, the Court DENIES the Motion of Kenneth Varin for Appointment as Lead Plaintiff and Approval of His Selection of Counsel [Dkt. No. 6]; GRANTS Mary McCloskey and Craig Kneller's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [Dkt. No. 9]; and DENIES the Motion for Appointment of Stein and Jenkins as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel [Dkt. No. 12].

**Background**

Plaintiff David M. Stein in the putative class action in Case No. 3:16-cv-549-L and Plaintiff Stephany Kam-Wan Chan in the related putative class action in Case No. 3:16-cv-668-L (collectively, "Plaintiffs"), as well as other prospective plaintiffs or class members, filed motions to consolidate the two actions. The Court granted the motions to consolidate and ordered Case No. 3:16-cv-668-L closed and consolidated under Case No. 3:16-cv-549-L. *See* Dkt. No. 17.

In the Order Consolidating Cases, the Court further explained:

> Each of the motions to consolidate also includes a request by Plaintiffs and Movants for the court to appoint or approve the appointment of a lead plaintiff and lead counsel for Plaintiff in

> accordance with Federal Rule of Civil Procedure 23(a) and the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In addition, the parties filed Stipulations in both actions in which they agree, subject to court approval, that Defendants' time to file an answer or otherwise respond is extended until after appointment by the court of a lead plaintiff under the PSLRA. The parties further stipulate that, upon appointment of a lead plaintiff, they will confer and present for the court's approval a proposed schedule that establishes a deadline for the filing of a consolidated complaint, a deadline for the Match Group Defendants and Underwriter Defendants to answer or otherwise respond to the consolidated complaint, and a briefing schedule governing any motions filed by Defendants with respect to the consolidated complaint. On April 15, 2016, the Underwriter Defendants in Civil Action No. 3:16-CV-668-L also filed a separate Motion to Extend Time to Answer or Otherwise Respond (Doc. 12) seeking similar relief. This motion appears to have been filed out of an abundance of caution because the Stipulations were not filed as motions.
>
> The court hereby approves the parties' Stipulations (Docs. 4, 9) and denies as moot the Underwriter Defendants' Motion to Extend Time to Answer or Otherwise Respond (Doc. 12). Accordingly, Defendants shall have no obligation to file an answer or otherwise respond until after the court appoints a lead plaintiff and lead counsel for Plaintiffs and establishes a schedule and deadlines for Plaintiffs to file a consolidated complaint and Defendants to answer or otherwise respond to the consolidated complaint.

*Id.* at 1-2.

The plaintiffs brings claims under Sections 11, 12(a), and 15 of the Securities Act of 1933, against Defendants Match Group, Inc., Gregory R. Blatt, Gary Swidler, Michael H. Schwerdtman, Gregg J. Winiarski, Joseph M. Levin, J.P. Morgan Securities LLC, Allen & Company LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Deutsche Bank Securities Inc., BMO Capital Markets Corp., Barclays Capital Inc., BNP Paribas Securities Corp., PNC Capital Markets LLC, Cowen and Company, LLC, SG Americas Securities, LLC, Fifth Third Securities, Inc., and Oppenheimer & Co. Inc.

Plaintiffs allege that Match Group operates dating products, such as Match and

OkCupid, as well as, various test preparation, academic tutoring, and college counseling services. Plaintiffs allege that Defendants made inaccurate statements in the Company's Registration Statement and the Prospectus issued in connection with the IPO during the fourth quarter in late November 2015 and led investors to believe that the Company's Princeton Review business had turned a corner and was experiencing profitability for the first time. Plaintiffs allege that these statements were inaccurate when made because, as later revealed by Defendant Gregory Blatt during a February 3, 2016 conference call, Defendants knew and failed to disclose in late November 2015 that the 2015 fourth quarter revenue and financial results would be adversely impacted by two items. The first was a U.S. government contract that was executed two-and-a-half months later than anticipated, which delay was known to Defendants in late November 2015 when they issued the Registration Statement and the Prospectus and which resulted in a revenue shortfall of millions of dollars. The second was a "greater than anticipated slowdown" in SAT preparation business clients during the 2015 fourth quarter due to a revamp of the test, which was also known to Defendants in late November when they issued the Registration Statement and Prospectus. *See* Dkt. No. 1.

Three groups of plaintiffs seek to be appointed as lead counsel and to obtain approval of their selection of lead and liaison counsel: (1) Kenneth Varin ("Varin"), who seeks approval of Levi & Korsinsky LLP as lead counsel and Deans & Lyons, LLP as liaison counsel; (2) Mary McCloskey and Craig Kneller (the "McCloskey Group"), who seek approval of Glancy Prongay & Murray LLP and Bragar Eagel & Squire, P.C. as

co-lead counsel and Kendall Law Group, PLLC as liaison counsel; and (3) David M. Stein and Varuna Jenkins (the "Stein Group"), who seek approval of Gainey McKenna & Egleston as lead counsel and Lackey Hershman LLP as liaison counsel.

## Legal Standards

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the district court must appoint the lead plaintiff "[a]s soon as practicable" after ruling on a motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA requires notice within 20 days after the plaintiff files a complaint that informs class members of their right to move for lead-plaintiff status within 60 days after the notice was published. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). The parties here do not dispute the adequacy of the notice.

Under the PSLRA, the court must "consider any motion made by a purported class member..., including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints," and must "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The most adequate plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v); *accord Brown v. Bilek*, 401 F. App'x 889, 893 (5th Cir. 2010) ("[T]he PSLRA grants th[e] lead plaintiff primary responsibility for selecting and supervising the attorneys who work on behalf of the class."). "The court should not disturb the lead plaintiff's choice of counsel unless

it is necessary to protect the interests of the [plaintiff] class. The adequacy of the putative class representative(s) and of plaintiffs' counsel should not be presumed, however, even in the absence of proof to the contrary; plaintiff bears the burden of demonstrating his and his counsel's adequacy." *Izadjoo v. Kratz*, No. CV H-15-2213, 2016 WL 343989, at *3 (S.D. Tex. Jan. 28, 2016) (internal quotation marks and citations omitted).

The Court must presume "that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that – (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *accord Brown*, 401 F. App'x at 893 n.7. "[This presumption] may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

"For the presumption to apply, 'the lead plaintiff or plaintiffs must possess not only the largest financial interest in the outcome of the litigation, but must also meet the requirements of Federal Rule of Civil Procedure 23.'" *Izadjoo*, 2016 WL 343989, at *2 (quoting *In re Waste Management, Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 411 (S.D. Tex. 2000)).

"In determining the largest financial interest, courts look to: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Buettgen v. Harless*, *Buettgen v. Harless*, 263 F.R.D. 378, 380 (N.D. Tex. 2009) (citing cases); *accord Netsky v. Capstead Mortgage Corp.*, No. 3:98-cv-1716-L, 2000 WL 964935, at *3 (N.D. Tex. July 12, 2000) ("While the PSLRA neither defines 'largest financial interest' nor explains how such a determination should be made, courts have found the following factors relevant to this inquiry: 1) the number of shares purchased during the class period; 2) the number of net shares purchased during the class period; 3) the total net funds expended by the plaintiffs during the class period; and 4) the approximate losses suffered during the class period.").

And, "[i]n the selection of lead plaintiff, the only relevant factors of Rule 23 are typicality and adequacy." *Buettgen*, 263 F.R.D. at 381; *accord Netsky*, 2000 WL 964935, at *6. "Rule 23 provides, in pertinent part, that the 'claims or defenses of the representative parties [must be] typical of the claims or defenses of the class' and that 'the representative parties will fairly and adequately protect the interests of the class.'" *Buettgen*, 263 F.R.D. at 381 (quoting FED. R. CIV. P. 23(a)(3)-(4)). "The inquiry at this stage is not as searching as would follow a motion for class certification, yet the plaintiff or group of plaintiffs must make some showing that its claims are typical of the putative class and that it has the capacity to adequately represent the class." *Id.*

To rebut the presumption that a particular putative lead plaintiff is the most

adequate plaintiff, a competing putative lead plaintiff must, as "a member of the purported plaintiff class," offer "proof ... that the presumptively most adequate plaintiff – (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "'There is, of course, a marked difference between affirmatively demonstrating that [the presumptive lead plaintiff ] is not an adequate representative or is subject to unique defenses and simply claiming that [the presumptive lead plaintiff] might be subject to such arguments in the future.'" *Town of Davie Police Pension Plan v. Pier 1 Imports, Inc.*, No. 3:15-cv-3415-D, 2016 WL 1625774, at *5 (N.D. Tex. Apr. 25, 2016) (quoting *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547 (N.D. Tex. 1997)). "The statute requires [the challenger] to present proof of its assertions." *Gluck*, 976 F. Supp. at 547-48 (internal quotation marks omitted).

**Analysis**

I.    The McCloskey Group is presumed "the most adequate" plaintiff.

    A.    The McCloskey Group has the largest financial interest.

There is no dispute that Varin, the McCloskey Group, and the Stein Group each timely filed a motion in response to the notice and therefore comply with Section 78u-4(a)(3)(B)(iii)(I)(aa). And there is no dispute that the McCloskey Group has the largest financial interest in the relief sought by the class, and the Court finds that it does, with approximately $21,282.55 in losses from their transactions of Match Group securities, compared to Varin's $1,529.00 and the Stein Group's $4,826.08. Indeed, the evidence shows that both Craig Kneller ($13,900.00) and Mary McCloskey ($7,382.55)

individually have the largest losses of any individual lead plaintiff movant and have losses larger than either Varin or the Stein Group, individually or combined. *See Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074 (W.D. Wash. 2011) (noting a court's willingness to select a group of previously unrelated investors where it does not appear the group was assembled merely for the purpose of aggregating their losses in order to surpass the financial interests of any other applicants where two members had individual losses which exceeded the financial interests of all other applicants); *Lentz v. Citadel Sec. Software, Inc.*, No. 3:05-cv-100-D, 2005 WL 1249441, at *2 (N.D. Tex. May 25, 2005) (noting that one of a group's members suffered losses greater than those of any other individual seeking lead plaintiff status).

    B.    The McCloskey Group otherwise satisfies Rule 23's requirements.

Because McCloskey and Kneller have the largest financial interest, they are presumptively entitled to lead-plaintiff status unless they fail to satisfy Rule 23's typicality and adequacy requirements.

"The question in determining 'typicality' is whether the named plaintiff's claims have the same essential characteristics as those of the other class members; they arise from the same event or course of conduct, and are based on the same legal theory." *Buettgen*, 263 F.R.D. at 381. "Factual differences will not defeat typicality as there is no requirement the claims be identical." *Id.* And "[t]he 'adequacy' requirement is fulfilled if there are no conflicts of interests between the named plaintiff and other class members and the named party is prepared to prosecute the action vigorously." *Id.*

The McCloskey Group has made a *prima facie* showing that their claims are typical of the claims asserted by the proposed class, where, like all members of the putative class, McCloskey and Kneller allege that Defendants violated the federal securities laws by disseminating materially misleading statements concerning the operations and financial performance of Match Group and, like all of the members of the proposed class, allege that they purchased Match Group shares at prices artificially inflated by Defendants' alleged misstatements and omissions and were damaged thereby. And McCloskey and Kneller assert that they have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions, such as this action; that their significant financial losses demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy; and that they are not aware that any conflict exists between their claims and those asserted on behalf of the putative class.

The PSLRA allows a "group of persons" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Courts have nevertheless explained that they "must 'consider whether an appointment of previously unrelated persons best serves the interest of the class and whether a sufficient governance structure is in place to assure that those individuals will actually manage the litigation'" and that "[a] group should not be created 'merely by counsel's giving a common name to previously unrelated people, who present no detailed structure by which they will operate.'" *Buettgen*, 263 F.R.D. at 381 (quoting *In re Carreker Corp. Sec. Litig.*, No. 3:03-cv-250-M, 2003 U.S. Dist. LEXIS 25988, at *10-*11 (N.D. Tex. Aug. 14, 2003)). And courts have observed, that, "[w]hen

unrelated investors are cobbled together, the clear implication is that counsel, rather than the parties, are steering the litigation.'" *Id.* (quoting *Tsirekidze v. Syntax–Brillian Corp.*, Nos. CV-07-2204-PHX-FJM, CV-07-2454-PHX-ROS, CV-07-2524-PHX-ROS, CV-07-2525-PHX-SRB, 2008 WL 942273, at *3 (D. Ariz. April 7, 2008)).

Varin and the Stein Group contend that the McCloskey Group will not fairly and adequately protect the interests of the class because it has failed to establish that it is a cohesive group rather than a manipulated effort by their lawyers to aggregate larger losses than other proposed lead plaintiffs. Varin and the Stein Group also assert that the McCloskey Group's selection of two law firms as co-lead counsel demonstrates the group's lawyer-driven nature.

McCloskey and Kneller have submitted a joint declaration that adequately makes the required cohesiveness showing. As a preliminary matter, as noted above, although the McCloskey Group seeks to be represented by two law firms as co-lead counsel, their individual losses surpass those of any other putative lead plaintiff here, removing any real concern that this group of two class members was formed only "to manufacture the greatest financial interest in order to be appointed lead plaintiff." *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-06140 MHP, 2008 WL 3925289, at *9 (Aug. 22, 2008).

Further, unlike in *Buettgen*, the McCloskey Group has submitted evidence to explain how the group was formed; how its members would function collectively; how potential disputes among the members or counsel would be resolved; and how the group members and counsel would communicate with one another about the litigation.

*See Buettgen*, 263 F.R.D. at 382.

Although McCloskey and Kneller admittedly had no pre-litigation connection, they have submitted evidence that they each understand their responsibility to keep informed of the status and progress of the action; understand the responsibilities of a lead plaintiff to monitor the action, make important litigation decisions, and direct counsel with respect to the litigation; are prepared to review pleadings and motion papers, produce documents, answer interrogatories, and/or sit for depositions; are aware that a lead plaintiff has a fiduciary duty to the entire class and are prepared to each fulfill that fiduciary duty by vigorously prosecuting the action with the goal of maximizing recovery for the class; and intend to communicate as often as necessary with counsel and with one another, separately from their attorneys, regarding major litigation events and litigation strategies recommend by their counsel. *See* Dkt. No. 25-1. They also attested to the reasons that they came together – agreeing to proceed as a group, in consultation with their counsel, because they would like the opportunity to serve as lead counsel and use their strengths and talents to ensure the best representation of the class – and that they have agreed on a mechanism to resolve any internal disagreements. *See id.*

"While the PSLRA aims to discourage lawyer-driven litigation, courts have recognized that 'a pre-existing relationship between [investors] that comprise a group is not required if the resulting group is small and cohesive enough such that it can adequately control and oversee the litigation.'" *Cook v. Atossa Genetics, Inc.*, No. C13-1836-RSM, 2014 WL 585870, at *6 (W.D. Wash. Feb. 14, 2014) (quoting

*Eichenholz*, 2008 WL 3925289, at *8); *see also Netsky*, 2000 WL 964935, at*6 ("A group of 1,155 lead plaintiffs would not be able to have the type of meaningful participation in the conduct of the litigation as contemplated by the Act. The court, however, believes that a smaller select group of investors with significant holdings who have suffered significant losses will satisfy the statutory goal of the PSLRA.").

Unlike in *Buettgen* and earlier decisions that cited and followed in that decision, the Court finds that the McCloskey Group has established that it "is a small, cohesive group that will endeavor to act in the best interests of the putative class members and manage the course of future litigation." *Cook*, 2014 WL 585870, at *6.

The Court likewise is persuaded that the McCloskey Group has made the required showing that it would adequately represent the class with two law firms as co-lead counsel. However commendable "a general rule [that], when all plaintiffs are similarly situated in terms of injury (as they are here), the class is best served by having one Lead Plaintiff and one Lead Counsel to minimize legal fees," the Court finds no basis to determine that the McCloskey Group is "nothing more than a lawyer-created group of unrelated investors who were cobbled together in the hope of thereby becoming the biggest loser for PSLRA purposes." *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006) (internal quotation marks omitted). With only two individuals in the group, the Court does not find under the circumstances here that allowing the McCloskey Group "to serve as lead plaintiff in this action and to be represented by two different law firms would defeat the purpose of choosing a lead plaintiff and undermine the objectives of the PSLRA," as Varin and

the Stein Group suggest. *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002).

Accordingly, McCloskey Group has demonstrated that it is entitled to the presumption that it is the most adequate plaintiff.

II.     <u>Varin and the Stein Group have not rebutted the presumption.</u>

To rebut that presumption, Varin or the Stein Group must offer "proof" that the McCloskey Group "will not fairly and adequately protect the interests of the class; or ... is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

In addition to the arguments already addressed and rejected above, the Stein Group asserts that McCloskey Group members purchased Match Group stock at various prices above the IPO price and will be subject to a motion to dismiss by Defendants that they are facially incapable of asserting a Securities Act § 12 claim. The Court determines that this does not rebut the presumption. As another judge in this circuit recently explained, "'[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action'"; "'[i]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim'"; and "[c]ourts reject a 'requirement that a different lead plaintiff be appointed to bring every single available claim' because that 'would contravene the main purpose of having a lead plaintiff – namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole.'" *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, No. H:15-CV-02404, 2015 WL 8207331,

at *4 (S.D. Tex. Dec. 7, 2015) (quoting *Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82 & n.13 (2d Cir. 2004)). The Court likewise follows this line of authority and rejects the assertion that "the presumptive lead plaintiff fail[s] to satisfy the typicality prong if he or she cannot assert every possible claim." *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 438 (S.D.N.Y. 2008) (citing *Hevesi*, 366 F.3d at 82-83).

The Stein Group also asserts that McCloskey sold some of her stock (a total of 3,268 shares) on December 2, 3, and 10, 2015 and on January 5, 2016, before the alleged disclosures, and that defenses unique to McCloskey would therefore imperil the putative class members' claims. But, as the McCloskey Group argues in reply, even if this is not mere speculation of what Defendants may assert, such a defense is not unique to McCloskey since, to the extent that Defendants will seek to limit damages based on a negative causation defense, they will seek to do so on a class-wide basis. Further, as the McCloskey Group points out, this defense would only target some of McCloskey's shares purportedly subject to the negative causation defense and does not substantively alter the financial interest analyses. The Court determines that this argument, too, does not rebut the presumption that the McCloskey Group is the most adequate lead plaintiff.

Varin and the Stein Group have failed to rebut the presumption that the McCloskey Group is the most adequate plaintiff. Accordingly, the Court finds that Mary McCloskey and Craig Kneller are the most adequate plaintiffs under the PSLRA and should be designated as lead plaintiff under 15 U.S.C. § 78u-4(a)(3).

III.   <u>The McCloskey Group's selected lead and liaison counsel are approved.</u>

Glancy Prongay & Murray LLP, Bragar Eagel & Squire, P.C., and the Kendall Law Group, PLLC meet the requirements for approval of lead and liaison counsel. The firms have all submitted resumes. *See* Dkt. No. 11. Each has extensive experience in securities class actions, and the Kendall Law Group, PLLC has extensive experience serving as liaison counsel. The record shows that the Glancy Prongay & Murray LLP, Bragar Eagel & Squire, P.C., and the Kendall Law Group, PLLC have the necessary competence, qualifications, and experience to adequately represent the interests of the plaintiff class, and the Court will allow these firms to serve as co-lead counsel and liaison counsel.

The Court has considered the objections of Varin and the Stein Group to McCloskey Group's selecting co-lead counsel but is not persuaded that lead plaintiffs' representation by two lead firms is inappropriate or unwarranted here. But, in view of those concerns, the Court "cautions the firms that representation of the putative class should be performed in such a way that there is not duplication of efforts, and that costs and expenses are not unnecessarily incurred for the representation of plaintiff[s]." *Netsky v. Capstead Mortgage Corp.*, No. 3:98-cv-1716-L, 2000 WL 964935, at *8 (N.D. Tex. July 12, 2000).

The McCloskey Group's choice of counsel is approved pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), and, accordingly, the law firms of Glancy Prongay & Murray LLP and Bragar Eagel & Squire, P.C. are approved as co-lead counsel and Kendall Law Group, PLLC is approved as liaison counsel.

**Conclusion**

For the reasons explained above, the Court DENIES the Motion of Kenneth Varin for Appointment as Lead Plaintiff and Approval of His Selection of Counsel [Dkt. No. 6]; GRANTS Mary McCloskey and Craig Kneller's Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel [Dkt. No. 9]; and DENIES the Motion for Appointment of Stein and Jenkins as Lead Plaintiffs and for Approval of Selection of Lead and Liaison Counsel [Dkt. No. 12]. The Court designates Mary McCloskey and Craig Kneller as lead plaintiff and approves Glancy Prongay & Murray LLP and Bragar Eagel & Squire, P.C. as co-lead counsel and Kendall Law Group, PLLC as liaison counsel.

SO ORDERED.

DATED: June 9, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE